William Mack DAVENPORT, by his next
friend, Robert E. DAVENPORT, and
Robert E. Davenport, Plaintiffs,

v.

ROCKBRIDGE COUNTY SCHOOL
BOARD, et al., Defendants.

Civ. A. No. 86–0133–L.

United States District Court,
W.D. Virginia,
Lynchburg Division.

April 1, 1987.

Edward L. Weilbacher, Legal Aid Society
of Roanoke Valley, Lexington, Va., for
plaintiffs.

George W. Wooten, M. Lanier Woodrum,
John L. Cooley, Fox, Wooten & Hart, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

KISER, District Judge.

The above-captioned matter was originally brought on October 27, 1986, by Robert E. Davenport as the natural single parent of William Mack Davenport [hereinafter Billy], a seventeen-year-old student who was and is enrolled in the special education program for handicapped children in the schools of Rockbridge County, Virginia. Plaintiff brought suit against the following Defendants: the Rockbridge County School Board, the individual members of the Board, and the Superintendent of Rockbridge County Schools. The basic allegations of the Complaint may be summarized as contending that the school system has failed to provide Billy with the free appropriate public education (FAPE) to which he is entitled under the Education for All Handicapped Children Act, 20 U.S.C. § 1401, *et seq.* [hereinafter EAHCA or EACA]. An Amended Complaint was filed on November 17, 1986, in which Billy was added as a named Plaintiff for whom suit was being brought on his behalf by his father as his next friend. Robert Davenport continued to be named as a Plaintiff. Before the Court for disposition at this time is the Motion to Dismiss filed on behalf of all Defendants.

■ At the hearing on the motion, I focused on and asked counsel to address in subsequent briefs the question of exhaustion of remedies as a prerequisite to bring-

ing a federal court action alleging violations of the EAHCA. Essentially, Plaintiffs' argument is that because Defendants have blatantly violated federal and state law in their failure to provide appropriate educational services for Billy, the exhaustion of administrative remedies requirement under the EAHCA need not be fulfilled prior to proceeding in federal court. It appears that some of the Plaintiffs' contentions are grounded in the passage in 1986 of the Handicapped Children's Protection Act, 20 U.S.C. § 1415 [hereinafter HCPA]. The HCPA was passed to amend section 615 of the EAHCA and permits the award of reasonable attorneys' fees in certain situations, as well as provides clarification on the effect of the EAHCA as it relates to rights, procedures, and remedies under other antidiscrimination laws. Section 3 of the HCPA adds a new subsection (f) to section 615 of the EAHCA, 20 U.S.C. § 1415. That subsection reads as follows:

> Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsection (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this part.

In accordance with the foregoing subsection, it appears beyond dispute that the exhaustion of administrative remedies is generally required prior to resorting to a court proceeding brought either under the EAHCA, other statutes or the Constitution, or a combination thereof.

The legislative history of the HCPA, a copy of which was attached to Defendants' brief in support of their dismissal motion, simply bolsters the clear language of the statute. That history makes it clear that although the EAHCA does not serve to limit the applicability of other nondiscrimination laws to handicapped children and youth, nevertheless, when parents seek to bring suit under other laws, they are re-

quired to exhaust administrative remedies provided for by the EAHCA to the same extent that this exhaustion would be required were the suit brought under the EAHCA. Thus, unless some reason exists under the applicable statutes (EAHCA and/or HCPA) to excuse the failure to exhaust administrative remedies in the present matter, Defendants' Motion to Dismiss must be granted.

Defendants and Plaintiffs recognize that the rule requiring exhaustion of remedies is not always adhered to, but rather may be sidestepped in situations where exhaustion can be shown to be a futile process or where standards for preliminary injunctive relief can be met. I have reviewed the documents submitted in the file of this case, as well as the applicable statutory and case law, and I am convinced that Defendants' motion should be granted, principally because this is not an appropriate case for suspension of the enforcement of the rule requiring exhaustion of administrative remedies. A case that is very persuasive on the appropriate course of action on the matter now before me is *Harris v. Campbell*, 472 F.Supp. 51 (E.D.Va.1979). In that case, Judge Merhige held that the failure of the plaintiff to exhaust his administrative remedies was dispositive of the issues being raised. He accordingly dismissed the action in its entirety without prejudice to the plaintiff to again present his claims to the court if necessary after the exhaustion of these remedies. In the *Harris* case, a seriously emotionally disturbed child was at home pending the location by school officials of an appropriate placement for the child. The child, in fact, had been admitted to a learning institution but was expelled shortly thereafter for his violent behavior. While other placement was being searched for, he was provided with homebound educational services in the form of a private instructor.

In commenting on the requirements of the EAHCA that matters relating to the provision of an FAPE to handicapped children needed to be brought before local and state agencies prior to judicial review, Judge Merhige commented as follows:

These Act requirements represent Congressional recognition of the view expressed by the Supreme Court in another school context that these educational questions lie in an area in which the courts' 'lack of specialized knowledge and experience counsels against premature interference with the informed judgments made at the state and local levels'. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973).

472 F.Supp. at 55. The court decided that plaintiff's claims under the Rehabilitation Act, the equal protection clause of the Fourteenth Amendment, and 42 U.S.C. § 1983 were premature and could not be pursued until the administrative remedies under the EAHCA were concluded.

Other equally persuasive cases exist on the exhaustion issue, among them *Phipps v. New Hanover County Board of Education,* 551 F.Supp. 732 (E.D.N.C.1982), which was cited in the briefs of both Plaintiffs and Defendants. In *Phipps,* the court granted a motion to dismiss for failure to exhaust available administrative remedies. In reaching its decision, the *Phipps* court concluded that "[u]niformly, courts have excused exhaustion when the state or local school board either failed to adopt the required administrative procedures or violated those procedures." *Id.* at 736. The Court found extremely useful the discussion of the exhaustion doctrine that appears in the case of *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770 (1st Cir.1981). In *Ezratty,* Judge Breyer noted that the underlying issue in the case, whether a child had been offered the educational program to which he was entitled, was "a matter that calls out for resolution initially at the agency level." *Id.* at 775. Furthermore, citing *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the *Ezratty* court made the following observations about the important interests that the exhaustion doctrine serves:

It allows the agency to develop a factual record, to apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes, all before a court will intervene. Insofar as specialized administrative understanding is important, the doctrine thereby promotes accurate results, not only at the agency level, but also by allowing more informed judicial review.... Insofar as Congress has provided that an agency will decide a matter in the first instance, to apply the doctrine normally furthers specific Congressional intent. And, as a general matter, the doctrine promotes a sensible division of tasks between the agency and the court: litigants are discouraged from weakening the position of the agency by flouting its processes, while court resources are reserved for dealing primarily with those matters which could not be resolved administratively. Thus, the doctrine serves interests of accuracy, efficiency, agency autonomy, and judicial economy. [citations omitted]

648 F.2d at 774.

 The same rationale delineated above should apply equally to the current case. As in *Harris,* there appears to be no evidence that school officials willfully withheld educational opportunities from Billy Davenport. The evidence before me shows that Billy has been enrolled in the Rockbridge County Schools since 1982. An affidavit filed on November 18, 1986, from Elizabeth Harris, Director of Instruction for Rockbridge County Schools, states that there were IEPs in place for all of the years during which Billy has been enrolled in that school system. Copies of those IEPs were attached as Exhibit 1 to Harris' affidavit. The affidavit submitted by Robert Davenport acknowledges that his former wife and Billy's stepmother attended a meeting in the spring of 1983. Mr. Davenport's agreement to the IEPs developed in 1983 is evidenced by IEP permission forms signed on March 17, 1983, and on September 23, 1983. The September permission form was executed by Mr. Davenport in the wrong blank, i.e. the one for the student's name rather than for the parent's signature. It should be noted that one of the problems in this entire case is that Mr. Davenport, by his own admission in his affidavit, is unable to read and write.

Thus, it no doubt has been very difficult in such circumstances for the school system to convey appropriate information and have that information understood when it is conveyed. Even though Robert Davenport's affidavit says he was not at IEP meetings, he clearly was. He signed IEP permission forms and signed as a participant at these meetings.

The evidence is somewhat confusing on the existence of an IEP for the 1984–85 school term because two IEP permission forms were signed in 1983, one in March and one in September. The evidence, however, specifically Exhibit C to Plaintiff's Brief in Opposition to the Dismissal Motion, indicates that an IEP for the 1984–85 school year and an IEP for the 1985–86 school year was approved at an IEP meeting held on May 27, 1985. On that date, the form which a parent or guardian must sign in order for his child to be enrolled in a special education program described in the IEP was executed by Robert Davenport. All participants in the meeting had to sign the IEP form, and Davenport signed as participating as Billy's father. This IEP permission form was identical to the ones that he had previously executed and on which he had signed as a participant and given his permission for Billy to be enrolled in the described program. With regard to the May, 1985 meeting, it should be noted that school records reflect that meetings were scheduled for May 8 and May 14 and that Mr. Davenport failed to appear for either of those meetings. Nevertheless, the school persisted in its efforts to secure his presence at an IEP meeting, and he did attend and execute the permission form on May 27 and Billy enrolled for the 1985–86 school year. The record reflects that Mr. Davenport voluntarily withdrew Billy from school on March 26, 1986, but that Billy returned for the 1986–87 school year.

A document from the school dated September 9, 1986, indicates that a re-evaluation conducted every three years to determine whether educational placement is appropriate for special education students was to be scheduled. This letter also included a list of the rights of a parent with regard to the provision of a FAPE. A notice dated October 27, 1986, was sent to Mr. Davenport announcing the IEP meeting for the 1986–87 school term. The meeting was scheduled for November 13, 1986. It is interesting to note from the eligibility summary prepared as a result of the evaluation committee meeting held on October 23, 1986, that Billy's school attendance is summarized. Mr. Davenport has contended that Billy had a rather extensive record of suspensions from school during the 1985–86 school term. However, the eligibility summary indicates that although he missed 43 days of class during that term, only 5 of those were the result of suspensions from school. Furthermore, during the months of September and October alone in 1986, Billy missed 14 days, only 2 of which were due to suspension (for fighting). The committee had determined that Billy was eligible for special education and related services based upon test data, school performance, and school behavior. The summary reflects that Mr. Davenport was present at the meeting but that he did not sign the minutes.

I agree with Defendants' position that Plaintiffs cannot rely on certain aspects of the legislative history of the HCPA plus their version of the facts, which version is subject to considerable dispute by the Defendants, to avoid the administrative exhaustion requirement. There appears to have been no attempt ever made by Robert Davenport to invoke the administrative procedures available to him. I cannot conclude from the state of the record that Mr. Davenport challenged Billy's placement consistently. He may have been dissatisfied with some of the actions taken by the school, but he attended IEP meetings and consistently signed the permission forms permitting Billy to be enrolled in the special education program described to him. Under the circumstances, this seems a particularly appropriate case in which to require that administrative procedures be utilized.

It is always tragic when a handicapped child allegedly is not receiving the FAPE to which he is legally entitled. To plunge him

into a court battle, however, is not necessarily to alleviate his plight. The cases are replete with situations in which progress through the judicial system takes years. Billy is already the age at which many students in the United States graduate from high school. It may well be that the administrative process can result in a mutually satisfactory placement for Billy well before this matter could make any real progress within the judicial system. This Court cautions Defendants against dilatory conduct during the administrative process and urges strict compliance with the timeliness provisions of 34 C.F.R. § 300.512 so that this matter may be administratively decided as promptly as possible.

In accordance with the foregoing discussion, Defendants' Motion to Dismiss shall be GRANTED without prejudice against the Plaintiffs to bring their claims to this Court, if necessary, after the exhaustion of their administrative remedies.