**Joseph HOWELL by his parents Leo and Paulette HOWELL, Plaintiff,**

v.

**WATERFORD PUBLIC SCHOOLS and Dr. Alton W. Cowan, in his official capacity as Superintendent of Waterford Public School District, Defendants.**

No. 89–CV–72004–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 9, 1990.

Marsha Lynn Tuck, Birmingham, Mich., for plaintiff.

Richard E. Kroopnick, Birmingham, Mich., John T. Rogers and James G. Loumos, Bloomfield Hills, Mich., for defendants.

## OPINION

DUGGAN, District Judge.

Plaintiff, a youth with several handicapping conditions, brings this lawsuit (by and through his parents) complaining of the special education services he presently receives. At issue, specifically, is the occupational and physical therapy given him. Essentially, plaintiff contends that such therapy is inadequate. He seeks, in part, injunctive relief and damages relying on the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.* (referred to by the parties and various courts as the "EHA" or the "EAHCA") and § 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794. Presently pending before the Court is defendants' "MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT". For the reasons set forth below, the Court will grant the motion, in part.

Initially, it should be noted that concessions made and contentions raised by the parties at oral argument factor into the Court's analysis. Accordingly, it is appropriate to highlight such concessions and contentions.

Plaintiff acknowledged, through counsel, that this lawsuit *primarily* asks the Court to determine whether the therapy he receives is proper, *i.e.,* in legal terms, whether he is receiving a "free appropriate public education". 20 U.S.C. § 1400(c).[1] However, plaintiff indicated that, in reaching this determination, the Court must resolve two "sub-issues", to-wit: (1) whether his curriculum included measurable goals and objectives which, plaintiff maintains, is required by law; and (2) whether attending therapists consulted with his treating physicians which, plaintiff also maintains, is required by law.

Defendants, in turn, argued that these "sub-issues" were *not* presented to and, thus, considered by administrative decision-makers below. Rather, such decision-makers addressed the following questions: (1) "What amount of [physical and occupational therapy] time is to be provided plaintiff each week?" and (2) "In what manner are the [physical and occupational therapy] services to be provided?" (Defendants' brief in support, at p. 3.)[2] Accordingly, defendants further argue, because the "sub-issues" were not administratively exhausted, this Court lacks subject matter jurisdiction over plaintiff's EHA and § 504 claims *to the extent* such claims are based on allegations *other than* those challenging the *amount* of therapy time provided or the *manner* in which therapy is provided.

The Court finds defendants' argument persuasive and holds that "claims" set forth in plaintiff's complaint, as amended, which challenge an aspect of his "individualized education program" *other than* the *amount* of therapy time provided or the *manner* in which therapy is provided are subject to dismissal.[3] Plaintiff's conten-

---

1. As defined by Congress, "[t]he term 'free appropriate public education means special education' and related services[,]" 20 U.S.C. § 1401(a)(18), such services to include "physical and occupational therapy". 20 U.S.C. § 1401(a)(17).

2. Indeed, the parties *stipulated to* the questions to be submitted to the administrative decision-makers.

3. Such "claims" include, but are not limited to, defendants' purported failure to develop goals and objectives and the purported failure to consult treating physicians.

tion, advanced in response to defendants' argument and discussed next, lacks merit.

■ Though not disputing that, *generally*, exhaustion *is* required of both EHA and § 504 claims, see 20 U.S.C. § 1415; *Tirozzi, supra* note 3, at 756, plaintiff maintained that exhaustion is excused where, as allegedly here, it would be "futile" to exhaust. In this vein, plaintiff observed that administrative proceedings can be lengthy and, consequently, the interests of the handicapped student are not always well-served. This Court does not believe exhaustion is futile simply because it may be time-consuming. As explained in *Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933 (6th Cir.1989), the time spent in the administrative process is meaningful:

> The policies underlying this exhaustion requirement are both sound and important. States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts—generalists with no expertise in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the EHA: "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson*, 468 U.S. [992] at 1012, 104 S.Ct. [3457] at 3468 [82 L.Ed.2d 747 (1984)]. Were federal courts to set

themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act. And both states and the federal government have a recognized interest in providing enforcement of the Act that is not only just but efficient. *Riley v. Ambach*, 668 F.2d [635] at 640 [(2d Cir.1981)]; *Mitchell v. Walter*, 538 F.Supp. [1111] at 1113 [(S.D.Ohio 1982)]. *See also McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) (reasons for doctrine of exhaustion of administrative remedies include need to allow administrative agency to apply its expertise and to develop the facts, efficiency, and protection of the authority of the administrative process).

*Id.* at 935.[4]

Having determined, then, that plaintiff's claims shall be limited to those claims relating to the *amount* of therapy provided and the *manner* in which it is provided, the Court turns now to consider a second issue defendant's motion raises, namely, whether such allegations state a § 504 claim as tested by Fed.R.Civ.P. 12(b)(6).

■ A 12(b)(6) motion tests the legal sufficiency of a complaint, not the facts that support it. *See* 5 C. Wright & Miller, *Federal Practice and Procedure*, § 1356, p. 590 (West 1969). In practice, then,

> [w]hen evaluating a motion to dismiss brought pursuant to rule 12(b)(6), the factual allegations in the complaint must be regarded as true. *Walker Process*

Also included are allegations intimating that the administrative hearings conducted below did not comport with due process. See, for example, paragraph 78 of the amended complaint. Though plaintiff's counsel suggested that such due process allegations need not be exhausted (indicating, in particular, that never in her experience as an EHA litigator was an argument to the contrary made, thereby implying that it is customary not to exhaust these allegations), she fails, however, to cite any authority. The decision in *White v. California*, 195 Cal.App.3d 452, 240 Cal.Rptr. 732 (1988), moreover, arguably undermines her position. *But see Mrs. W. v. Tirozzi*, 832 F.2d 748, 757–758 (2d

Cir.1987). This Court is not prepared to accept counsel's unsupported suggestion.

4. Recognizing that "the need for swift action which administrative procedures cannot provide may justify an exception to the exhaustion requirement," *id.* at 937 (citation omitted), the *Crocker* court nevertheless declared: "[N]o exception will be made where plaintiffs assert an emergency that is in fact 'a problem of their own making.' *Phipps v. New Hanover County Bd. of Educ.*, 551 F.Supp. 732, 737 (E.D.N.C. 1982)." *Ibid.* Here, the Court is satisfied that "an exception to the exhaustion requirement," is not "justif[ied]". *Ibid.*

*Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–349, 15 L.Ed.2d 247 (1965). The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). *See also Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987), *citing Windsor.* Applying this accepted rule, that is, viewed in a "light most favorable" to plaintiff, *H.J. Inc. v. Northwestern Bell Tel. Co.,* — U.S. ——, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989), this Court is of the opinion that plaintiff's complaint pleads an actionable § 504 claim.

■ Section 504 of the Rehabilitation Act of 1973 reads, in part:

(a) Promulgation of rules and regulations

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. Relying on *Monahan v. Nebraska,* 687 F.2d 1164 (8th Cir.1982), defendants contend[5] that plaintiff's allegations, even if true, do *not* state a violation of § 504. In particular, defendants refer to the following passage:

The language of the statute is instructive. It prohibits exclusion, denial of benefits, and discrimination "solely by reason of … handicap." Manifestly, in order to show a violation of the Rehabilitation Act, something more than a mere failure to provide the "free appropriate

education" required by EAHCA must be shown. The reference in the Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not necesarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap. An evaluation, in other words, is not discriminatory merely because a court would have evaluated the child differently.

We do not read § 504 as creating general tort liability for educational malpractice, especially since the Supreme Court, in interpreting the EAHCA itself, has warned against a court's substitution of its own judgment for educational decisions made by state officials. We think, rather, that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children. It is our duty to harmonize the Rehabilitation Act and the EAHCA to the fullest extent possible, and to give each of these statutes the full play intended by Congress. The standard of liability we suggest here accomplishes this result and also reflects what we believe to be a proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields. So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among

**5.** Unlike the exhaustion issue discussed earlier, oral argument with regard to the legal sufficiency of plaintiff's § 504 claim, again, as tested by Rule 12(b)(6), did not significantly add to this Court's understanding of the issue. This issue, then, is decided on the briefs.

educational professionals, we cannot believe that Congress intended to create liability under § 504.

687 F.2d at 1170–1171. Here, defendants maintain, plaintiff's complaint omits allegations of "bad faith" or "gross misjudgment", *id.* at 1171. According to defendants, the EHA thus provides plaintiff's exclusive remedy. The Court disagrees.

In the Court's opinion, defendants' reliance on *Monahan, supra,* is misplaced. The language from *Monahan* quoted above (language which, incidentally, was *dicta*) is similar to the following, taken from *Smith v. Robinson,* 468 U.S. 992, 1019, 104 S.Ct. 3457, 3472, 82 L.Ed.2d 746 (1984): "Even assuming that the reach of § 504 is co-extensive with that of the EHA, there is no doubt that the remedies [and] rights ... set out in the EHA are the ones it intended to apply to a handicapped child's claim to a free appropriate public education." As cases have subsequently observed, however, *Smith* is no longer good law. *See, e.g. Fontenot v. Louisiana Bd. of Elementary and Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir.1986) ("Congress read the Supreme Court's decision in *Smith* and acted swiftly, decisively and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent."). See also *Tirozzi, supra* note 3, where the Second Circuit undertook an extended analysis. There, the court wrote in relevant part:

> ... Congress amended the EHA in 1986 and enacted the Handicapped Children's Protection Act of 1986. In section 3 of that Act, Congress added the following new subsection to 20 U.S.C.A. § 1415:
>
> (f) Effect on other laws
>
> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973[ ], or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall

be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(f) (West Supp.1987). By enacting this nonexclusivity provision Congress expressly overruled *Smith.* See *Board of Educ. of E. Windsor Regional School Dist. v. Diamond,* 808 F.2d 987, 994–95 (3d Cir.1986) (Congress overruled *Smith* ); *Fontenot, [supra ]; Silano v. Tirozzi,* 651 F.Supp. 1021, 1024 (D.Conn.1987) (same).

Congress stated that § 1415(f) was designed to "reestablish statutory rights repealed by the U.S. Supreme Court in *Smith v. Robinson* " and to "reaffirm, in light of this decision, the viability of section 504, 42 U.S.C.1983, and other statutes as separate vehicles for ensuring the rights of handicapped children." H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985) (hereinafter 1985 House Report); *see also id.* at 3 (need for legislation), 6 (effect on *Smith* ); S.Rep. No. 112, 99th Cong., 2d Sess. 2–3, reprinted in 1986 U.S.Code Cong. & Admin.News 1798, 1799–1800 (discussing *Smith* ) (1986 Senate Report).

*Congress stressed that its original aim had been to allow resort to other judicial remedies for claims based on the EHA. See* 1985 House Report, *supra,* at 7; 1986 Senate Report, *supra,* at 15; *see also Handicapped Children's Protection Act of 1985: Hearings on S.415 Before the Subcomm. on the Handicapped of the Senate Comm. on Labor and Human Resources,* 99th Cong., 1st Sess. 2 (1985) (opening statement of Senator Weicker) (Section 1415(f) "is intended to be a simple restoration and clarification of congressional intent.") *Moreover, Congress specifically identified § 1983, § 504 of the Rehabilitation Act of 1973, and the Constitution as other sources of rights and remedies in special education cases. See* 20 U.S.C. § 1415(f); H.R.Conf.Rep. No. 687, 99th Cong., & Admin.News 1807, 1809. ("It is the conferees' intent that actions brought under 42 U.S.C.1983 are governed by this provision."); 1985 House

Report, *supra,* at 3 ("Section 1983 prohibits among other things, an agency acting under color of state law from abridging a handicapped person's rights under the Constitution.")

832 F.2d at 754–755 (emphasis added). Because *Monahan predated* the EHA's 1986 amendment discussed in *Tirozzi,* this Court is not inclined to give such decision the authoritative reading defendants do.

In short, and contrary to defendants' contention, this Court holds that plaintiff's allegations to the effect that he is not being provided the proper *amount* of therapy nor provided therapy in the proper *manner* state an actionable § 504 claim. See *Sanders v. Marquette Public Schools,* 561 F.Supp. 1361 (W.D.Mich.1983) where the court opined:

> In essence plaintiffs claim that, but for her disabilities, the education Louise received would have been "appropriate" within the meaning of the Act. Here disabilities allegedly made other measures "appropriate." Consequently, defendants' alleged failure properly to assess and accommodate Louise's disabilities denied her the benefit of measures that would have made her education "appropriate." These circumstances seem as clearly within the province of the Act as those presented when a handicapped person seeks access to a program that is not designed to alleviate learning disabilities. *Cf., Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

*Id.* at 1372.

In conclusion, the Court agrees with defendants that the *only* allegations of plaintiff's amended complaint which have been administratively exhausted and, thus, may predicate the legal claims he asserts are those allegations challenging the *amount* of therapy time provided and the *manner* in which it is provided. The Court disagrees, however, with defendants' position that such allegations do not state a § 504 claim. Accordingly, defendants' motion is granted, in part, and denied, in part.

An order consistent with this opinion shall issue forthwith.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint or, In the Alternative, Partial Summary Judgment. For the reasons set forth in an opinion issued this date,

IT IS ORDERED that defendants' Motion for Partial Dismissal or Partial Summary Judgment is hereby GRANTED, IN PART, and all claims of plaintiff except plaintiff's claims relating to the *amount* of therapy time to be provided and the *manner* of the therapy services are hereby DISMISSED. Such "DISMISSED" claims include but are not limited to:

(1) That plaintiff's curriculum did not include measurable goals;

(2) That defendants' failed to assure that attending therapists consulted with plaintiff's treating physician.

IT IS FURTHER ORDERED that the balance of defendants' Motion for Partial Dismissal or Partial Summary Judgment is DENIED.