Daniel **DRINKER,** et al.

v.

**COLONIAL SCHOOL DISTRICT,** et al.

Civ.A. No. 94–7101.

United States District Court,
E.D. Pennsylvania.

Feb. 13, 1995.

---

Barbara E. Ransom, Public Interest Law Center of Philadelphia, Philadelphia, PA, for plaintiffs.

Andrew E. Faust, Curtin and Heefner, Doylestown, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

### I. *Introduction*

Plaintiff, Daniel Drinker, is nine years old and suffers from Down's Syndrome and cerebral palsy, conditions that qualify him as an "exceptional" child, *see* 22 Pa.Code § 14.1. In Count II of their complaint, he and his parents seek a permanent injunction requiring defendants, the Colonial School District and others (whom we shall collectively call "Colonial"), to keep Daniel at Gladwyne Elementary School in the Lower Merion School District.[1] They base their claim on the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485.[2]

The Drinkers moved to the Colonial School District in 1992. At that time, Colonial placed Daniel in the Gladwyne Elementary School in the Lower Merion School District because Colonial lacked the means to educate Daniel in its own schools (AR 873a & n. 3).[3] Thus, Daniel lives in the Colonial School District but travels to Gladwyne for school. It costs roughly $25,000 per year to send Daniel to Gladwyne (AR 477a (testimony of Ned Drinker)).

Colonial eventually developed a program into which they wished to place Daniel. On July 30, 1993, Colonial told Daniel's parents that it intended to move him to Whitemarsh

---

1. Daniel and his parents have also sued the Superintendent of the Colonial School District, the Director of Pupil Services, and the members of the school board.

2. The Drinkers have also asserted a claim alleging that defendants have violated statutory and constitutional rights protected by 42 U.S.C. § 1983.

3. We shall refer to the administrative record by page number, using the abbreviation "AR".

Elementary School, a school within the Colonial School District. The Drinkers protested the change and invoked their hearing rights under Pennsylvania law.[4] Dr. Carroll Redfern conducted a hearing on November 1, 1993. In his decision of that month, Dr. Redfern concluded that Colonial could proceed with Daniel's transition, but not until the fall of 1994 and not until it completed a transition plan. Colonial thought the delay before transition was overlong and appealed the decision. The Drinkers did not appeal.

On March 17, 1994, a three-judge administrative appeals panel affirmed Dr. Redfern's decision, as amended. The appeals panel agreed with the District's assessment of the delay before transition and held that (1) the parties were to develop a transition plan by April 1, 1994; (2) Daniel could remain at Gladwyne through April 22, 1994; and (3) the parties could move Daniel to Whitemarsh on April 25, 1994, where Colonial would continue to implement his transition plan.[5]

The parties did not develop Daniel's transition plan in accordance with the first appeals panel's schedule because the parents refused to cooperate.[6] On April 25, 1994, Colonial stopped paying for Daniel's education at Gladwyne. Thus, Daniel remains at Gladwyne, but Colonial refuses to pay the bill. The Drinkers paid $6,000 to Gladwyne for Daniel's education but have now exhausted their resources.[7]

In June, 1994, the parties finally met to discuss Daniel's transition. The parents again refused to discuss the development of a transition plan and, on August 1, 1994, requested another due process hearing. Dr. Carole Welch conducted a three-day hearing in October, 1994, at which Daniel's parents sought to raise the issue of Daniel's placement.

On October 30, 1994, Dr. Welch issued an opinion and order (AR 742a–753a). The opinion and order contains two holdings. First, Dr. Welch found that the issue of Daniel's placement was barred by principles of *res judicata* because Daniel's parents had not sought judicial review of the March, 1994 appeals panel's decision. Second, because the parties before her could not develop a transition plan, Dr. Welch created a transition plan for moving Daniel from Gladwyne to Whitemarsh. Daniel appealed Dr. Welch's opinion and order to an administrative appeals panel on November 21, 1994, and, two days later, filed this action. On December 28, 1994, an appeals panel affirmed Judge Welch's decision in full (AR 873a–881a).[8]

Counsel first appeared before this Court on December 2, 1994. The Drinkers sought a preliminary injunction so that Daniel could remain at Gladwyne at Colonial's expense. At that time, however, the administrative process was incomplete: Dr. Welch had issued her decision, but Daniel's appeal before the three-judge panel was still pending.[9]

---

4. In IDEA jargon, the school sent Daniel's parents a Notice of Recommended Assignment (NORA), see 22 Pa.Code § 14.61, which is grounds for a due process hearing, see 22 Pa. Code § 14.64.

5. At our hearing on December 2, 1994, Colonial introduced a binder of "Hearing Exhibits". The March, 1994 appeals panel's decision is exhibit 4 in that binder. For reasons that will be become clear, throughout the text of this Memorandum, we shall refer to the body that issued this decision as the "first appeals panel".

6. At our hearing on February 3, 1995, Ned Drinker, Daniel's father, testified that he and his wife refused to discuss Daniel's transition from Gladwyne to Whitemarsh because they believed that Daniel's placement was still at issue.

7. At our hearing on December 2, 1994, Colonial introduced a letter from Lawrence Sweigert, Director of Pupil Services in the Lower Merion

School District, to Fred Shipman, Director of Pupil Services in the Colonial School District. The letter suggests that Lower Merion does not intend to disenroll Daniel from Gladwyne despite the parents' non-payment, though it does reserve the right to pursue the parents for payment.

8. We shall refer to the body that issued this decision as the "second appeals panel".

9. Pennsylvania law requires an appeals panel to issue a decision within thirty days. 22 Pa.Code § 14.64(*o*)(3). In this case, the appeals panel issued its decision thirty-seven days after the parents' request for review. The delay likely resulted from the parents' threshold motion that the appeals panel recuse itself (AR 863a–867a). In any event, the seven-day delay appears to have been harmless, and we regard it as inconsequential.

Thus, with the parties' consent, we continued the hearing until after the second appeals panel issued its decision. We held a hearing on February 3, 1995.

The parties agreed to consolidate the hearing with a trial on the merits, pursuant to Federal Rule of Civil Procedure 65(a)(2). We heard testimony from Ned Drinker, Daniel's father; Cheri Settani, Daniel's learning support teacher at Gladwyne; Rita M. Greeley, Director of Special Education in the Colonial School District; and Fred G. Shipman, Director of Pupil Services in the Colonial School District. The parties also agreed that the Drinkers could submit a supplemental affidavit of C. Wayne Jones, their family psychologist, who was unable to attend the hearing; we received Dr. Jones's submission on February 10. Pursuant to 20 U.S.C. § 1415(e)(2), we also received the record of the administrative proceedings below.

This Memorandum will constitute our Rule 52(a) factual findings and legal conclusions.

## II. *Analysis*

### A. *Scope of Review*

■ The IDEA grants the Drinkers the right to limited judicial review of the administrative proceedings below. 20 U.S.C. § 1415(e)(2) governs the scope of our review:

> In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

Although we retain the discretion to consider "additional evidence", the Third Circuit has emphasized that the trial court "must not allow 'such evidence to change the character of the hearing from one of review to a trial *de novo*'". *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir.1994) (citation omitted). Our primary focus must be on the administrative record. *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982) ("The fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] ad-

ministrative proceedings' carries with it the implied requirement that due weight shall be given to those proceedings.").

In the clearest exposition of the relationship between "additional evidence" and the administrative record, the First Circuit has instructed courts to allow parties to supplement the administrative record where appropriate:

> The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790–91 (1st Cir.1984), *aff'd sub nom. Burlington School Committee v. Dep't of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), cited with approval in *Bernardsville, supra,* 42 F.3d at 161.

In *Board of Education v. Rowley, supra,* 458 U.S. at 206–07, 102 S.Ct. at 3050–51, the Supreme Court held that judicial review of state IDEA proceedings should focus on two questions. First, a court must ask whether the state complied with the procedural requirements of the Act. Second, it must ask whether the state's determinations are "reasonably calculated" to enable the subject of the proceeding to receive educational benefits. *Id.* at 207, 102 S.Ct. at 3051. This standard of review has two benefits. First, it properly recognizes that Article III judges rarely have the educational expertise to arrive at a better result than the administrative process. *Id.* at 206, 102 S.Ct. at 3050 ("[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Second, it prevents the judiciary from imposing more requirements on the administrative process than Congress has contemplated. *See id.* at 207, 102 S.Ct. at 3051 ("If these requirements

are met, the State has complied with the obligations imposed by Congress and the courts can require no more.").

## B. *Issues on Review*

We have had significant difficulty determining the issues that we may review in this action. As will be seen, our difficulty on review arises from the intersection of three vectors: (1) the unique procedural posture of this case; (2) the Third Circuit's generous statute of limitations for judicial review of IDEA proceedings; and (3) traditional rules of exhaustion and issue preservation.

There is no question that we have jurisdiction over the decision of the December, 1994 appeals panel,[10] but the parties' real dispute lies elsewhere. The Drinkers want Daniel to remain at Gladwyne at Colonial's expense, and so they argue that we may also review the issue of Daniel's placement there. Colonial wants to move Daniel to Whitemarsh, and they want the Drinkers to pay for the cost of keeping Daniel at Gladwyne from April, 1994 through the present. Neither party seriously challenges the issues that we unquestionably may review, *see* note 10, *supra.*

Specifically, Daniel asks us to: "(1) grant the parents the opportunity to have a full and fair hearing on the issues [of] placement; (2) set aside the administrative res judicata doctrine as inappropriate; (3) order the District to convene a meeting of the IEP team and allow the team to determine location and placement of special education services; and, (4) order the Colonial School District to assume its financial responsibility for Daniel's education prospectively and retroactively" (Plaintiffs' Pretrial Memorandum at 3). Daniel's counsel echoed this request at our most recent hearing. At that hearing, she told us that the Drinkers wished to present evidence solely on the issue of placement, rather than transition.

10. That is, we may review (1) whether the appeals panel correctly concluded that the issue of Daniel's placement at Whitemarsh was *res judicata;* and (2) whether the appeals panel correctly concluded that Dr. Welch has created an appropriate transition plan.

11. Specifically, the first appeals panel decided:

For reasons we explain below, we conclude that (1) we may not review the issue of Daniel's placement; (2) the Drinkers have raised no issue regarding the propriety of Dr. Welch's transition plan, which the second appeals panel affirmed; and (3) Colonial violated the IDEA's automatic stay provision when it ceased paying for Daniel's education at Gladwyne. We address each conclusion in turn.

### 1. *Daniel's placement*

The Pennsylvania Code provides for hearing and appeals rights in IDEA cases:

> (a) Parents may request an impartial due process hearing concerning the identification, evaluation or educational placement of ... a student who is exceptional or who is thought to be exceptional....
>
> ....
>
> (m) The decision of the impartial hearing officer may be appealed to a panel of three appellate hearing officers. The panel's decision may be appealed further to a court of competent jurisdiction.

22 Pa.Code. § 14.64. Thus, the Code provides for a two-tier system of state review, and an additional level of judicial review.

◼ As we described above, Dr. Redfern concluded in the first hearing that Colonial could place Daniel at Whitemarsh, and he also set a timetable to govern that transition. Colonial appealed the Redfern decision and challenged only the length of the transition period. Daniel did not appeal. Thus, the first appeals panel never considered whether Whitemarsh was or was not the appropriate placement for Daniel. The language of the Pennsylvania Code allows the Drinkers to appeal only "[t]he panel's decision". The first appeals panel never considered, and hence never decided, whether Daniel should or should not move from Gladwyne to Whitemarsh. It only considered the period during which that transition should occur.[11]

1. By April 1, 1994 the parents and district [must] develop a written plan for Daniel's transition to [Whitemarsh];
2. Daniel may remain in his current placement [at Gladwyne] through April 22, 1994 and receive those elements of his transition

To the extent that we may review the first appeals panel's decision at all, we may only examine the length of the transition period.

■ Case law makes clear that the rules of exhaustion and issue preservation apply in judicial review of IDEA hearings. In *Hampton School District v. Dobrowolski*, 976 F.2d 48, 53 (1st Cir.1992), the First Circuit counseled that "[c]laims not articulated to the district court cannot be raised on appeal, even if they had been pressed before the hearing officer." The same is true as between appeals panels and district courts: a district court generally cannot consider claims not presented to an appeals panel. *See D.R. v. East Brunswick Bd. of Educ.*, 838 F.Supp. 184, 194 (D.N.J.1993) ("Pursuant to IDEA, failure to raise an issue at the administrative level will result in waiver of that issue on appeal."); *Johnson v. Lancaster–Lebanon Intermediate Unit*, 757 F.Supp. 606, 617 (E.D.Pa.1991) (excusing the failure to raise a claim below only after finding that it would have been futile to raise the claim); *Howell by Howell v. Waterford Public Schools*, 731 F.Supp. 1314, 1316 (E.D.Mich. 1990) ("Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.") (citation omitted). The leading administrative law treatise states a similar "general rule":

> Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

4 Kenneth C. Davis, *Administrative Law Treatise* § 26:7, at 441 (2d ed. 1983) (citation omitted). The Drinkers were obligated to present their placement-related arguments to the first appeals panel. They did not do so,

and thus may not press those arguments before this Court on review.

Similarly, we decline to bypass the first appeals panel's decision and reconsider Dr. Redfern's conclusion regarding Daniel's placement. The Sixth Circuit has explicitly held that the reasoning of *Board of Education v. Rowley, supra*, 458 U.S. at 206–07, 102 S.Ct. at 3050–51, and "general principles of administrative law" counsel deference to the second tier of state review in states that have established two tiers of review. *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624 (6th Cir.1990).

The Drinkers proffer two arguments in their quest for judicial review of Daniel's placement. First, they contend that we may review Daniel's placement because they have sought judicial review within the limitations period. Second, they contend that the second appeals panel erred when it concluded that the Drinkers' placement-related arguments were *res judicata*. We consider these arguments in turn.

■ The Drinkers first argue that we are still within the period during which they may challenge the decision of the March, 1994 appeals panel, and they rely for support on *Bernardsville Board of Education v. J.H.*, 817 F.Supp. 14 (D.N.J.1993), *aff'd*, 42 F.3d 149 (3d Cir.1994), and *Tokarcik v. Forest Hills School District*, 665 F.2d 443 (3d Cir. 1981), *cert. denied sub nom. Scanlon v. Tokarcik*, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982). In *Tokarcik*, our Court of Appeals examined Pennsylvania statutes of limitations and held that the proper statute of limitations for IDEA claims is at least two years, though it might also be as long as six years. *Tokarcik*, 665 F.2d at 454–55.

We agree that *Tokarcik* allows us to review the decision of the first appeals panel. The Drinkers' argument is inapposite, however, because it addresses only the relevant limitations period, not the relevant scope of appeal. Although the limitations period has not expired, we may only review what the first appeals panel actually decided, and the

---

plan that must be implemented in his current placement; [and]

3. Beginning April 25, 1994 Daniel shall attend his district's special education program

where he may continue to receive elements of his transition plan that must be implemented in that setting.

first appeals panel did not rule on Daniel's placement at Whitemarsh. Thus, the Drinkers' first argument cannot widen the scope of our review.

■ Second, the Drinkers argue that the second appeals panel incorrectly concluded that issues relating to Daniel's placement were *res judicata.* The second appeals panel concluded that the Drinkers' placement-related arguments were barred because "the parents did not follow[ ] through with their communicated intent to file a timely judicial appeal ..." (AR 878a).

■ This statement is either a *non sequitur* or an error of law. Although it is fairly clear that *res judicata* applies to administrative proceedings, *see, e.g., Restatement (Second) of Judgments* § 83 (1982) ("[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata ... as a judgment of a court."), the doctrine only bars relitigation of issues decided in prior proceedings, *see id.* § 17–19; *see also Federated Department Stores v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The second appeals panel may have thought that *it* could not re-hear issues regarding Daniel's placement because the Redfern hearing was a separate proceeding from the Welch hearing. We find no error in this interpretation. When the Drinkers failed to appeal Dr. Redfern's decision, that decision became final with respect to subsequent, state administrative proceedings. *See D.R. v. East Brunswick Bd. of Educ., supra,* 838 F.Supp. at 194–95. Because the Drinkers did not press their placement-related arguments on direct administrative review, they waived their right to press them on collateral administrative review. The second appeals panel properly concluded that the Drinkers could not relitigate placement issues in the Welch hearing. Under this interpretation, however, the reference to "judicial proceedings" would be a *non sequitur,* because *res judicata* would attach to the subsequent state proceeding whether or not the Drinkers sought judicial review.

Alternatively, the second appeals panel may have erroneously concluded that the statute of limitations has passed, and hence that no forum, including this Court, could review the first appeals panel's decision. If so, then the second appeals panel has made a clear error of law. As we concluded above, *Tokarcik*'s liberal interpretation has preserved the Drinker's right of judicial review of the first appeals panel's decision (albeit not of the issues that they proffer for review).[12] Moreover, we agree with the Eleventh Circuit that IDEA proceedings cannot have a preclusive effect in federal court. *See JSK v. Hendry Cty. Sch. Bd.,* 941 F.2d 1563, 1568 (1991).

We hold that the second appeals panel did not err when it refused to allow the Drinkers to relitigate the issue of Daniel's placement. This decision is consistent with our earlier conclusion that the Drinkers have not preserved their placement-related arguments for judicial review. They were obligated to present their arguments before Dr. Redfern (which they did) and before the first appeals panel (which they did not). We agree with the second appeals panel that Daniel's placement at Whitemarsh is no longer at issue, and that Colonial may move Daniel to Whitemarsh provided that such placement continues to be appropriate for his needs.[13]

---

12. The panel may also simply have confused the limitations periods in federal and state court. The IDEA allows parties to seek judicial review "in any State court of competent jurisdiction or in a district court of the United States...." 20 U.S.C. § 1415(e)(2). It appears that a party who wishes state-court review must seek that review in the Pennsylvania Commonwealth Court within thirty days of an appeals panel's decision. *See* 42 Pa.Cons.Stat.Ann. § 5571(b). *Tokarcik* rejected this period as too short. *Tokarcik,* 665 F.2d at 454. We agree with Judge Fisher in *Bernardsville Board of Education v. J.H., supra,* 817 F.Supp. at 17–18, that *Tokarcik*'s reasoning was

*sui generis. Bernardsville* noted that other circuits have either explicitly or implicitly criticized the *Tokarcik* decision. *Id.* at 18. Nevertheless, like Judge Fisher, we conclude that *Tokarcik* remains good law in our Circuit. *Id.* at 17.

13. To hold that the second appeals panel erred in applying *res judicata* to the Drinkers' placement-related arguments would in effect allow them to relitigate Daniel's placement. We decline such an approach. Daniel, his parents, and the defendants need the stability that flows from finality, *i.e.,* an end to these proceedings. The Supreme Court has already noted that IDEA proceedings

### 2. *Daniel's transition*

At the outset of our most recent hearing, the Drinkers' counsel informed the Court that she would not present evidence regarding Daniel's transition to Whitemarsh. She stated that she instead wished to supplement the record (within the meaning of 20 U.S.C. § 1415(e)(2)) by introducing evidence regarding Daniel's placement in Gladwyne. We declined to allow such evidence into the record. Ned Drinker, Daniel's father, testified that he was also unwilling to discuss Daniel's transition to Whitemarsh.

We have reviewed the administrative record and can find no error regarding Daniel's transition plan. Thus, like the second appeals panel, we too conclude that Dr. Welch did not err, procedurally or substantively, when she created Daniel's transition plan.

### 3. *The IDEA's automatic stay*

Finally, Daniel argues that Colonial violated the automatic stay when it ceased paying for Daniel's education at Gladwyne. We agree.

20 U.S.C. § 1415(e)(3) establishes an automatic stay during any IDEA appeal:

> During the pendency of *any* proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardians otherwise agree, the child *shall* remain in the then current educational placement of such child....

20 U.S.C. § 1415(e)(3) (emphasis added). In *Honig v. Doe*, 484 U.S. 305, 323, 108 S.Ct. 592, 604, 98 L.Ed.2d 686 (1988), the Court reiterated that "[t]he language of § 1415(e) is unequivocal." In *Honig*, the Supreme Court declined to read into the IDEA an exception for dangerous students. *Id.* Subsequent courts have followed the Supreme Court's admonition against "rewrit[ing] the statute." *Id.; see, e.g., Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1038 n. 7 (3d Cir.1993); *Thomas v. Cincinnati Bd. of Educ., supra*, 918 F.2d at 625. In *Fuhrmann*, our Court of Appeals emphasized that § 1415(e)(3) freezes the status quo of a child's placement *pendente lite*. *Fuhrmann*, 993 F.2d at 1038 n. 7.

In this action, Daniel has remained at Gladwyne, but at the Drinkers' expense. Colonial almost certainly ceased paying for Daniel's education there in the erroneous belief that the statute of limitations barred review of the first appeals panel's decision. As we have held, however, *Tokarcik* has preserved the parents' right to review of that decision (though not of the issues that they proffer for review). It follows that Colonial must bear the burden of paying for the costs of Daniel's education at Gladwyne through our review. *See Burlington School Committee v. Dep't of Educ., supra*, 471 U.S. at 372–75, 105 S.Ct. at 2003–05.[14]

### III. *Conclusion*

Until now, the parties have been at an impasse. The Drinkers have refused to discuss Daniel's transition to Whitemarsh until Colonial addresses Daniel's placement, but Colonial refuses to discuss Daniel's placement. The Drinkers distrust Colonial, and Colonial believes that the Drinkers are dragging their feet. After considering the testimony of the witnesses from both sides at our most recent hearing, we have little doubt that all the parties are trying to act in Daniel's best interest. In our decision today, we have also tried to be mindful of Daniel's best interest.

The Commonwealth has concluded that Whitemarsh is an appropriate placement for Daniel, and we shall not disturb that conclusion. After an appropriate transition, Colonial may place Daniel in Whitemarsh. If the Drinkers wish Daniel to remain at Gladwyne, then from this day forward they must pay for his education there.

---

have become "ponderous", *see Honig v. Doe*, 484 U.S. 305, 322, 108 S.Ct. 592, 603, 98 L.Ed.2d 686 (1988) (citation omitted), and the burdens of delay certainly weigh more heavily on the parties than on the courts in these difficult, emotionally-charged matters. We believe that our decision today is the most consistent with the law and with the needs of the parties before us.

14. We shall also enter judgment on the Drinkers' § 1983 claim. The only statutory violation we have found is Colonial's violation of 20 U.S.C. § 1415(e)(3). Standing alone, that violation cannot rise to the level of a § 1983 claim. Moreover, the Drinkers have not carried their burden in proving the Colonial violated their constitutional rights.

## ORDER

AND NOW, this 13th day of February, 1995, upon consideration of plaintiffs' Complaint and Motion for Preliminary Injunction, and the Answer and responses of the defendants thereto, and for the reasons expressed in the accompanying Memorandum and *viva voce* at our hearings on December 2, 1994 and February 3, 1995, it is hereby ORDERED that:

1. Plaintiffs' Motion for a Preliminary Injunction (which, with the parties' consent, is consolidated with the trial on the merits, Fed.R.Civ.P. 65(a)(2)), is GRANTED IN PART, to the extent of ¶ 2, below;

2. Daniel Drinker shall remain at Gladwyne Elementary School through the date of this Order, and the cost of his placement there shall be borne by defendants;

3. In all other respects, the Motion for a Preliminary Injunction is DENIED;

4. With the consent of the parties, and in accordance with Fed.R.Civ.P. 65(a)(2), JUDGMENT IS ENTERED against plaintiffs and in favor of defendants on Count I of plaintiffs' complaint;

5. JUDGMENT IS ENTERED against defendants and in favor of plaintiffs on Count II of plaintiffs' complaint; and

6. The Clerk SHALL CLOSE this case statistically.