

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-12-1996

# Drinker v. Colonial School District

Precedential or Non-Precedential:

Docket 95-1201

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Drinker v. Colonial School District" (1996). *1996 Decisions.* Paper 215.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/215

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-1201


DANIEL DRINKER, by his parents and next friends
Ned Drinker and Diane Drinker, and the Parents;
NED DRINKER; DIANE DRINKER, on their own behalf

v.

COLONIAL SCHOOL DISTRICT; STANLEY J. DURTAN,
individually and in his capacity as Superintendent
of Schools; FRED G. SHIPMAN, individually and in his
capacity as Director of Pupil Services; RITA M. GREELEY,
individually and in her capacity as Coordinator of
Special Education; STUART KESSLER, individually and in
his capacity as President of the School Board;
JACK PINHEIRO, individually and in his capacity as
Vice-President of the School Board; LENORA CICCALONE;
RICHARD CONNOLLY; ALLEN MANDELBAUM; ROBERT O'NEILL;
MARC ORLOW; DIANE RAMBO, individually and in their
capacities as Members of the School Board,

<u>Appellants</u>


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 94-07101)


Argued January 29, 1996

BEFORE:  GREENBERG, NYGAARD, and LAY,[0] <u>Circuit</u> <u>Judges</u>

(Filed: March 12, 1996)

Andrew E. Faust (argued)
Sweet, Stevens, Tucker & Katz
116 East Court Street
Doylestown, PA  18901

---

[0]Honorable Donald P. Lay, Senior Judge of the United States Court
of Appeals for the Eighth Circuit, sitting by designation.


1

                                    <u>Attorneys for Appellants</u>

                        Frank J. Laski (argued)
                        Barbara E. Ransom
                        Public Interest Law Center
                              of Philadelphia
                        125 South 9th Street, Suite 700
                        Philadelphia, PA  19107

                                    <u>Attorneys for Appellees</u>

                        OPINION OF THE COURT


GREENBERG, <u>Circuit</u> <u>Judge</u>.

        This case arises under the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-85.

Appellees Ned and Diane Drinker brought the case individually,

and as parents and next friends of their son, Daniel, against the

appellants Colonial School District and certain of its officials,

seeking a preliminary injunction requiring the defendants to keep

Daniel at Gladwyne Elementary School in the Lower Merion School

District.[0]  As a matter of convenience we will refer to

appellants collectively as "Colonial."  The district court had

jurisdiction under the IDEA, 20 U.S.C. § 1415(e)(4)(A), and 28

U.S.C. §§ 1331, 1343.  We have jurisdiction over the appeal from

the district court's final order dated February 13, 1995,

granting in part and denying in part the Drinkers' motion for a

preliminary injunction and entering judgment in favor of the

---

[0]Daniel and his parents also sued the Superintendent of the
Colonial School District, the Director of Pupil Services, and the
members of the school board.

Drinkers on Count II of their complaint, since the district court's order terminated the litigation in that court. 28 U.S.C. § 1291. We will affirm the district court's order, and remand the case for the entry of orders in accordance with our opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Daniel Drinker,[0] a ten-year-old child born with Down's Syndrome and cerebral palsy, has received special education and related services since he was an infant. Since the summer of 1992, Daniel's family has resided in the Colonial School District. Colonial first evaluated Daniel for special education services that summer and, consistent with that evaluation, prepared an individual education program (IEP) for Daniel with the help of his parents on October 21, 1992. At that time, Colonial placed Daniel in a full-time learning support class at the Gladwyne Elementary School in the neighboring Lower Merion School District because Colonial lacked the means to educate Daniel in its own schools. It cost roughly $25,000 per year to send Daniel to Gladwyne.

In 1993, Colonial developed a special education program in its own schools into which it wished to place Daniel. Accordingly, on July 30, 1993, Colonial issued a Notice of Recommended Assignment (NORA) to Daniel's parents indicating that it intended to move Daniel to a full-time learning support class

---

[0]We normally would not publish the name of a child involved in IDEA proceedings. However, because the district court did so in its published opinion, we see no utility in our own redaction.

at Whitemarsh Elementary, a school within the Colonial District in September 1993.[0] The Drinkers protested the change and invoked their hearing rights under the IDEA.[0] 20 U.S.C. §1415(b)(2). Dr. Carroll Redfern, a Pennsylvania impartial hearing officer, conducted a hearing on the issue on November 1, 1993. In his decision, Dr. Redfern concluded that Colonial could change Daniel's placement to Whitemarsh Elementary School, but

---

[0]As noted in Drinkers' brief, Colonial violated Daniel's rights under the IDEA by unilaterally altering Daniel's NORA. Br. at 14 n.10. The state appeals panel noted as much in its March 17, 1994 opinion:

> [T]he district, by unilaterally altering
> Daniel's NORA and, by implication, his IEP,
> has lost an opportunity to treat Daniel's
> change in schools as anything other than a
> change in placement. We advise the district
> that the hearing officer erred in finding
> that no procedural violations occurred. The
> district may not alter, unilaterally, an
> agreed upon NORA or IEP . . . .

App. at 13. We note the issue here merely as part of our summary of facts, as it has not been raised for our review.
[0]Under the Pennsylvania regulations implementing the IDEA, parents may request an impartial due process hearing

> concerning the identification, evaluation or
> educational placement of, or the provision of
> a free appropriate public education to, a
> student who is exceptional or who is thought
> to be exceptional or a young child who is
> eligible or who is thought to be eligible, if
> the parents disagree with the school
> district's identification, evaluation or
> placement of, or the provision of a free
> appropriate public education to, the student
> or young child.

22 Pa. Code § 14.64 (1993); see also 34 C.F.R. §§ 300.504, 300.506 (1995). Under the Pennsylvania regulations, Daniel qualifies for special education as an "exceptional student." See 22 Pa. Code §§ 14.1, 342.1.

4

not until the beginning of the 1994-1995 school year and not until it completed a transition plan.  Colonial thought the delay recommended by Dr. Redfern before Daniel's transition to Whitemarsh was too long and appealed the decision to the state education agency.  The Drinkers did not appeal the decision of Dr. Redfern.[0]

On March 17, 1994, a three-judge administrative appeals panel issued an opinion agreeing with Colonial that Dr. Redfern's

---

[0]There is some dispute as to why the Drinkers did not appeal the hearing officer's decision that Colonial could proceed with the placement change in Daniel's program.  In their brief, the Drinkers state that the hearing officer "ordered the parents and the District to use the spring semester to prepare a transition plan for Daniel to move into a Colonial School District site in the fall."  Br. at 5 (citing Hearing Officer Decision, App. at 11).  Apparently, the suggestion here is that Dr. Redfern did not specifically order placement at Whitemarsh, but only placement at a school within the Colonial District:

> Despite the characterization of Whitemarsh as the stay put placement by the second appeals panel, . . . Dr. Redfern's order never mentioned Whitemarsh Elementary as an appropriate placement for Daniel; rather, he ordered the parents and the District to meet `for the purpose of preparing a transitional plan for Daniel to enter CSD [the District] [in] the fall semester of 1994.'

Id. at 5 n.3 (quoting App. at 11).

The Drinkers further state that they "did not object to Dr. Redfern's order, because, as they testified, they have never objected to an appropriate in-district placement."  Id. at 5.  Thus, the parents seem to suggest that, had they realized that the hearing officer's order would require placement specifically at Whitemarsh Elementary, they would have appealed the order to the first appeals panel.

For the purposes of this appeal, we need not determine why the Drinkers did not appeal the placement decision of Dr. Redfern.  Their decision not to appeal, however, has contributed to a procedurally complex series of IDEA disputes.

5

recommended delay before transition was too long and holding that: (1) the parties were to develop a transition plan by April 1, 1994; (2) Daniel could remain at Gladwyne through April 22, 1994; and (3) the parties could move Daniel to Whitemarsh on April 25, 1994, where Colonial would continue to implement his transition plan.

The parties did not develop Daniel's transition plan in accordance with the appeals panel's schedule because the Drinkers refused to cooperate with Colonial. On April 25, 1994, Colonial stopped paying for Daniel's education at Gladwyne. Drinker v. Colonial Sch. Dist., 888 F. Supp. 674, 676 (E.D. Pa. 1995). Nevertheless, Daniel remained at the school. The Drinkers paid $6,000 to Gladwyne for Daniel's education before exhausting their resources.

---

At the district court hearing held on February 3, 1995, Daniel's father testified that he and his wife refused to discuss Daniel's transition from Gladwyne to Whitemarsh after the appeals panel's decision because they believed that Daniel's placement was still in dispute at that time. Drinker v. Colonial Sch. Dist., 888 F. Supp. 674, 676 n.6 (E.D. Pa. 1995).

Colonial claims that the Drinkers "have materially misrepresented to the Court that the Colonial School District discontinued its support for the Gladwyne placement in the Spring of 1994," while in fact "the District bore the considerable expense of this placement for the entire 1993-1994 school year." Reply br. at 2. Because of our decision to affirm the holding of the district court, this factual dispute is at issue in the case only in regards to the amount to be reimbursed the Drinkers and the Lower Merion School District for bearing the costs of Daniel's education at Gladwyne after Colonial's refusal to pay. However, we have not been asked, nor do we choose, to address the factual issue since we remand the case for decision on that matter.

We state these facts as the district court found them, see Drinker v. Colonial Sch. Dist., 888 F. Supp. at 676, since we have not been asked to review that court's findings of fact in this regard. On remand, the district court will need to

6

In June 1994, the parties finally met to discuss Daniel's program. The parents again refused to discuss the development of a transition plan and, on August 1, 1994, requested another due process hearing. Dr. Carole Welch conducted that hearing in October 1994, at which Daniel's parents sought to raise the issue of Daniel's placement.

On October 30, 1994, Dr. Welch issued an opinion and order that contained two holdings. First, Dr. Welch found that the issue of Daniel's placement was barred by principles of res judicata because Daniel's parents had not sought judicial review of the March 1994 appeals panel's decision. Second, because the parties could not develop a transition plan, Dr. Welch created a plan intended to effect the complete transition of Daniel into the Whitemarsh Elementary program by December 1994. The Drinkers appealed Dr. Welch's opinion and order to an administrative appeals panel on November 21, 1994, and, two days later, filed this action. On December 28, 1994, the appeals panel affirmed Dr. Welch's decision in full.[0]

The Drinkers first appeared before the district court on December 2, 1994, seeking a preliminary injunction providing that Daniel could remain at Gladwyne at Colonial's expense. At

---

determine the exact amount to be reimbursed the Drinkers for the cost of Daniel's education at Gladwyne.

[0] Pennsylvania law requires an appeals panel to issue a decision within 30 days. 22 Pa. Code § 14.64(o)(3). In this case, the appeals panel issued its decision 37 days after the parents' request for review. The district court concluded that the seven-day delay appeared to have been harmless and regarded the delay as inconsequential. Drinker v. Colonial Sch. Dist., 888 F. Supp. at 767 n.9. The issue has not been raised for review in this court.

that time, however, the administrative process was incomplete: Dr. Welch had issued her decision as an impartial hearing officer, but the appeal before the three-judge panel still was pending. Thus, with the parties' consent, the district court continued the hearing until after the second appeals panel had issued its decision. After the panel issued the decision, the district court held a full hearing on February 3, 1995.

On February 3, 1995, the parties agreed to consolidate the hearing on the preliminary injunction with a trial on the merits, pursuant to Fed. R. Civ. P. 65(a)(2). Following the resulting hearing, the district court issued a decision and order dated February 13, 1995, affirming in their entirety the substantive findings and conclusions of Dr. Welch and the second appeals panel. The court agreed with the hearing officer and appeals panel that the issue of whether Colonial could change Daniel's placement from Gladwyne to Whitemarsh had been litigated before Dr. Redfern and thus could not be relitigated before Dr. Welch and the second appeals panel. Drinker v. Colonial Sch. Dist., 888 F. Supp. at 680. The court's reasoning in support of this conclusion differed from that of Dr. Welch and the second appeals panel, however. Rather than relying on the Drinkers' failure to appeal the decision of the first appeals panel to the district court to conclude that litigation of the placement issue was barred by res judicata, as had Dr. Welch and the second appeals panel, the district court found that the Drinkers were barred from litigating the issue further by their failure to

raise the issue beyond the hearing officer in the first proceeding.  Id.

Further, the district court concluded that the "stay put" provision in section 1415(e)(3) of the IDEA required Colonial to maintain and support Daniel's continued placement at Gladwyne pending the outcome of the second due process hearing and the subsequent appeals to the administrative appeals panel and the district court.  Thus, the court ordered Colonial to pay Daniel's expenses at Gladwyne through the date of its order. Finally, the court denied the Drinkers' claim under 42 U.S.C. §1983, finding that, standing alone, Colonial's violation of 20 U.S.C. § 1415(e)(3)'s stay put requirement did not rise to the level of a section 1983 claim, nor had the Drinkers carried their burden in proving that Colonial violated their constitutional rights.  Drinker v. Colonial Sch. Dist., 888 F. Supp. at 681 n.14.  Colonial appeals only the district court's ruling concerning section 1415(e)(3) of the IDEA.  The Drinkers have not filed a cross-appeal.

## II.  DISCUSSION
### A.  Section 1415(e)(3) of the IDEA

The IDEA, 20 U.S.C. §§ 1400-85, gives parents the right to an impartial due process hearing on complaints regarding the educational placement of their handicapped children, id. §1415(b)(2), and to state or federal judicial review of final

administrative decisions, id. § 1415(e)(2).[0]  During these administrative and judicial proceedings, section 1415(e)(3) of the Act, known as the "stay put" rule, W.B. v. Matula, 67 F.3d 484, 500 (3d Cir. 1995), applies:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

---

[0]Section 1415(e)(2) of the IDEA provides in relevant part:

> Any party aggrieved by the findings and decision made under subsection . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).

Pennsylvania has adopted a "two-tier" special education administrative hearing system that consists of an evidentiary hearing at the "local" level before a single impartial hearing officer and then an independent review at the "state" level before a panel of three impartial appellate officers. See 22 Pa. Code § 14.64(m). This system conforms with the requirements of sections 1415(b)(2) and (c) of the IDEA. See 20 U.S.C. §§1415(b)(2), (c).

20 U.S.C. § 1415(e)(3); see also 34 C.F.R. § 300.513(a).[0]

The Supreme Court has described the language of section 1415(e)(3) as "unequivocal," in that it states plainly that "`the child shall remain in the then current educational placement.'" Honig v. Doe, 484 U.S. 305, 323, 108 S.Ct. 592, 604 (1988). In describing the section's purpose, the Court noted that it seems clear that "Congress very much meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." Id. at 323, 108 S.Ct. at 604; see also School Comm. v. Department of Educ., 471 U.S. 359, 373, 105 S.Ct. 1996, 2004 (1985) ("We think at least one purpose of § 1415(e)(3) was to prevent school officials from removing a child from the

---

[0]The educational agency and contesting parents may agree to a change in placement under section 1415(e)(3). Federal regulations under the statute thus provide as follows:

> During the pendency of any administrative or judicial proceeding regarding a complaint, unless the public agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her present educational placement.

34 C.F.R. § 300.513. The due process requirements of the Pennsylvania regulations implementing the IDEA track this federal standard:

> No change in the identification, evaluation, educational placement or IEP of an exceptional student or an eligible young child may be made during the pendency of an administrative or judicial proceeding unless agreed to by the parties to the proceeding.

22 Pa. Code § 14.61(b).

11

regular public school classroom over the parents' objection pending completion of the review proceedings.").

Section 1415(e)(3) of the IDEA functions, in essence, as an automatic preliminary injunction. Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982). As the Court of Appeals for the Second Circuit has stated, "[t]he statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." Id. (citations omitted); see also Woods v. New Jersey Dep't of Educ., No. 93-5123, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) 439, 440 (3d Cir. Sept. 17, 1993).[0] As we have stated:

> The provision represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved. Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief.

Woods, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440. The relevant inquiry under section 1415(e)(3) thus becomes the identification of "the then current educational placement,"[0]

---

[0] As appellants correctly note, our decision in Woods is unpublished, and thus is not regarded as binding authority. See Internal Operating Procedure 5.8 (1994). However, because of the case's factual similarity to that before us, we look to the decision as a paradigm of the legal analysis we should here follow.

[0] Neither the statute nor the legislative history provides guidance for a reviewing court on how to identify "the then

12

of the handicapped student and, further, the identification of who should pay for it.  See Woods, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440; Zvi D., 694 F.2d at 906.  As the Court of Appeals for the Second Circuit explained in Zvi D.:

> [I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing.  To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.

Id. at 906 (citing Monahan v. Nebraska, 491 F. Supp. 1074, 1089 (D. Neb. 1980), aff'd in part, vacated in part on other grounds, 645 F.2d 592, 597-98 (8th Cir. 1981)).

In addressing Colonial's appeal, then, we must decide if Gladwyne indeed qualified as Daniel's "then current educational placement" during the pendency of the parents' second round of hearing officer and appeals panel review and until the time that the district court ruled.[0]  Our review of this legal issue is plenary.  See Woods, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440; Leonard v. McKenzie, 869 F.2d 1558, 1564 (D.C. Cir. 1989).

### B.  "During the pendency of any proceeding . . . ."

Colonial's argument is several-fold.  First, Colonial interprets Pennsylvania's two-tier system of administrative

---

current educational placement."  Zvi D. v. Ambach, 694 F.2d at 906 n.5; see also Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625 (6th Cir. 1990).
[0]The Drinkers have not asserted that the "stay put" provision extended beyond that date.

review as providing for "finality" of decision at the "local" level of impartial hearing officer review to the extent that such a decision is not appealed to the state level. See br. at 10-11 (citing 20 U.S.C. § 1415(c) and (e)(1); 34 C.F.R. § 300.509). Decisions made at the state level, according to the school district, are final to the extent that they are not appealed for judicial review. Id. at 11 (citing 20 U.S.C. § 1415(e)(1); 34 C.F.R. § 300.510(d)).

Colonial next quotes from our decision in Woods, as follows:

> [T]he purpose of the `stay put' is to preserve the status quo of the child's functioning placement and program until the underlying IDEA litigation is resolved, unless there is an effective waiver of the protection of the `stay put' (emphasis added).

Br. at 11 (citing Woods, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440). Colonial then seeks to apply this statement from Woods to the situation of Daniel Drinker, concluding that:

> In the present case, the `underlying IDEA litigation' concerning the central issue of whether Daniel should be placed at Whitemarsh Elementary or remain at Gladwyne Elementary was unquestionably `resolved' when the parents failed to challenge Dr. Redfern's ruling on that issue before the first appeals panel. On this point both the second appeals panel and the [district] court completely agree, and their independent conclusions are not in question before this Court on appeal. . . . [T]he decision to place Daniel at Whitemarsh Elementary School by the beginning of the 1994-1995 school year was resolved beyond the point of either collateral attack in further administrative proceedings or direct attack in judicial appeal.

14

Br. at 11-12. Thus, Colonial essentially argues that because Dr. Redfern decided that it could change Daniel's educational placement from Gladwyne to Whitemarsh, which decision the Drinkers did not appeal to the state administrative panel, Dr. Redfern's decision became a final resolution of the "underlying IDEA litigation," rendering section 1415(e)(3)'s stay put requirement to keep Daniel at Gladwyne satisfied as of April 25, 1994.

In making this argument, Colonial relies on the elements of the district court's decision holding that the Drinkers were barred from litigating the placement issue once they failed to appeal Dr. Redfern's decision to the state administrative panel. Specifically, Colonial cites the district court's conclusion that the issue of Daniel's placement, which they claim to be the crux of the "underlying IDEA litigation," was "resolved beyond the point of either collateral attack in further administrative proceedings or direct attack in judicial appeal" because the issue was not appealed to the first state appeals panel. Br. at 12. Therefore, Colonial argues that since the "underlying IDEA litigation" was thus settled, section 1415(e)(3)'s mandate to maintain the "then current educational placement" of Daniel at Gladwyne Elementary was settled at the point of the first appeals panel's decision.

We will assume without deciding that the district court properly concluded that the underlying placement dispute was resolved when the Drinkers did not appeal Dr. Redfern's decision. Nevertheless, Colonial's conclusion that the court's application

15

of the stay put provision of section 1415(e)(3) was inappropriate does not follow.  Colonial makes the conceptual mistake of separately cabining the issues of placement and transition, concepts that cannot be so radically separated.[0]  While it is true that the Drinkers acquiesced in Dr. Redfern's placement decision, that decision included, as part and parcel of the plan, a nearly-one-year transition program for Daniel.  In contrast, the appeals decision of March 1994 aimed to place Daniel at Whitemarsh by April 24, 1994, with barely a three-week transition period.  Transition periods and timing of placement are integral elements of any educational program, elements that were not settled by any stretch of the imagination even were we to address Colonial's claim that the bare fact of placement at Whitemarsh had been decided as of March 17, 1994.  Thus, Dr. Redfern's placement decision, though settling the issue of where Daniel ultimately would be placed, had <u>not</u> settled the timing and transition issues, since those elements were contested hotly through the time of the February 13, 1995 decision of the

---

[0]Appellees stated the situation well in their brief:

> By defining the underlying litigation as only the placement issue, i.e. Gladwyne or Whitemarsh, Appellants ignore the important issues the parents consistently contested that were integrally related to the appropriate educational placement of Daniel. Those issues included the nature and length of transition (which Appellants resisted), an appropriate IEP (which appellants resisted), and payment for the appropriate program (Gladwyne).

Br. at 12 (footnote omitted).

district court.  Consequently, Colonial's claim that section 1415(e)(3)'s mandate to maintain the Gladwyne placement could not apply past the first appeals panel's decision is not an accurate statement of the section's application.

Colonial's reliance on Letter to Spindler, OSEP Policy Letter, Apr. 21, 1992, reprinted in 18 Indiv. Disabilities Educ. L. Rep. (LRP Publications) 1038, 1039 (1992), does not change our conclusion.  Colonial contends that this letter from the Office of Special Education Programs of the U.S. Department of Education to an educator in Montana plainly holds that "the pendent placement in which a student must `stay put' is the one upheld by a final, unappealed order, regardless of whether continued program disputes and due process hearings concerning that placement are likely."  Br. at 13.  However, the facts at issue in Letter to Spindler concerned an unappealed district court order regarding educational placement.  The letter simply states that, for stay put purposes, an unappealed district court order is a final order.  In contrast, here Colonial's claimed "final" order was that of an impartial hearing officer, unexamined by either state administrative or judicial review, and the program disputes at issue were not the mechanics of an IEP, as in Letter to Spindler, but the all-important issues of timing and transition to a new educational placement -- the issues at the core of section 1415(e)(3)'s concerns.  Thus, we find Letter to Spindler unpersuasive in regards to our holding that the "underlying IDEA litigation" concerning Daniel Drinker's education was not resolved at the time of the first appeals

17

panel's decision.  <u>Woods</u>, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440.  Because the litigation was not resolved, section 1415(e)(3)'s requirement that "during the pendency of any proceedings . . . the child shall remain in the then current educational placement" applied to the case of Daniel Drinker beyond the first appeals panel decision.

## C.  Daniel Drinker's "then current educational placement"

As the Drinkers note, there is no question that Gladwyne was the current placement of Daniel Drinker at the time Colonial issued the NORA to them in July 1993.  Br. at 11.  The IEP team, consistent with the requirements of the IDEA, 42 U.S.C. § 1414(a)(5), and Pennsylvania Regulations, 22 Pa. Code §§14.42(b), (c), and 14.32, had determined the appropriate placement and location of services for Daniel to be Gladwyne Elementary in October 1992.  In the fall of 1993, there was no other valid IEP in place.  Thus, there was no other current educational placement at that time.  As the Court of Appeals for the 6th Circuit has stated:

> Because the term connotes preservation of the status quo, it refers to the operative placement actually functioning at the time the dispute first arises.  If an IEP has been implemented, then that program's placement will be the one subject to the stayput provision.  And where . . . the dispute arises before any IEP has been implemented, the `current educational placement' will be the operative placement under which the child is actually receiving instruction at the time the dispute arises.

Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625-26 (6th Cir. 1990).

The standard in our cases has been the same. As we noted in Woods, "the dispositive factor in deciding a child's `current educational placement' should be the Individualized Education Program ("IEP") . . . actually functioning when the `stay put' is invoked." Id., 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440.

As the operative placement actually functioning at the time the dispute between the Drinkers and Colonial arose (the IEP actually functioning when the stay put provision of the IDEA was invoked) was Daniel's placement at Gladwyne Elementary, the district court was correct in its decision that Colonial must bear the burden of paying for the costs of Daniel's education at Gladwyne through the date of the district court's final order. See School Comm. v. Department of Educ., 471 U.S. at 372-74, 105 S.Ct. at 2004-05.

## D. Waiver

Colonial's second line of attack on the district court's holding is that the Gladwyne Elementary School could not have remained Daniel's "then current educational placement" because of the effective waiver of the protection of the "stay put" provision by Daniel's parents. Colonial claims that:

> Dr. Welch, the second appeals panel, and the District Court below appear to be united in their conclusion that the failure of the parents to appeal Dr. Redfern's order to the first appeals panel effectively and

19

conclusively resolved the underlying placement dispute in favor of Colonial's Whitemarsh Elementary proposal. The District Court also concluded, in an analysis that specifically addressed its ability to consider the placement issue as if on direct appeal from the first panel's decision, that the parents had effectively waived the right to litigate further the appropriateness of the placement at Whitemarsh by failing to present the issue to the first panel.

Br. at 15.

However, even were we to accept the argument that the Drinkers were estopped from raising the placement issue for either administrative or judicial review once they failed to bring the matter to the attention of the first appeals panel, section 1415(e)(3)'s stay put mandate would apply to Daniel's situation because the transition elements of his program still were being contested hotly by the parties through the time of the district court's review. As the Drinkers note in their brief,

[a]dministrative decisions . . . that may be interpreted as inconsistent with the lower court's finding that Gladwyne was Daniel Drinker's current placement `cannot metamorphize [sic] the procedural record or alter facts' that the Drinkers were continuing to resist Colonial's vigorous efforts to move Daniel as quickly as possible from Gladwyne and impose the costs of continued placement at Gladwyne on the Drinkers.

Br. at 13 (citing Woods, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440).

Moreover, to the extent that appellants argue that the Drinkers "effectively" waived the protection of the stay put provision, the Drinkers are correct in noting that nothing in Woods or any other case that we have found interprets the stay

20

put provision as suggesting that parents can lose their stay put protection except by affirmative agreement to give it up.  See Br. at 13 (citing Woods, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440.)  In any event, even assuming that in a proper case the stay put provision can be waived, we find nothing in the record here that leads us to believe that this is such a case.  Consequently, inasmuch as there was no explicit agreement by the Drinkers and Colonial that Gladwyne would not be Daniel's "current educational placement" for purposes of the stay put provision, the Drinkers did not waive that protection.  See 20 U.S.C. § 1415(e)(3); 34 C.F.R. § 300.513; 22 Pa. Code §14.61(b).

### III.  CONCLUSION

For all the reasons detailed above, we will affirm the district court's order of February 13, 1995, granting the Drinkers' motion for a preliminary injunction in part and entering judgment in favor of the Drinkers on Count II of their complaint.  Accordingly, we will remand the case to the district court for the entry of orders requiring Colonial to reimburse all costs billed to the Drinkers for Daniel's education at Gladwyne and to pay all further costs owed to the Lower Merion school district for Daniel's education through February 13, 1995, the date of the district court's final order.[0]  In accordance with

---

[0] The Court of Appeals for the District of Columbia Circuit held in Andersen v. District of Columbia, 877 F.2d 1018, 1023 (D.C. Cir. 1989), that maintenance of a child's "then current educational placement" under section 1415(e)(3) is required only

21

the district court's order of September 20, 1995, the Drinkers are entitled to renew their motion for attorneys' fees to that court within 14 days of the issuance of our judgment.  Thus, we need not address that issue here.

---

through the level of district court review.  That is, maintenance of the placement is not required during the process of appeal to the courts of appeal or the Supreme Court.  Id.  To our knowledge, that court is the only court of appeals to have addressed this issue.  Without deciding the matter, we affirm the district court's decision to require Colonial to "bear the burden of paying for the costs of Daniel's education at Gladwyne through [the district court's] review."  Drinker v. Colonial Sch. Dist., 888 F. Supp. at 681.